IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RONALD T. SPRIGGS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:18-CV-120-Z-BR |
| | § | |
| BRIAN THOMAS, *et al.*, | § | |
| | § | |
| Respondents. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Ronald T. Spriggs ("Petitioner") filed a *Petition for a Writ of Habeas Corpus by a Person in State Custody*, challenging the constitutional and statutory legality or validity of his state court contempt conviction. (ECF 1). The undersigned United States Magistrate Judge recommends Petitioner's application for federal habeas corpus relief be DENIED.

**I.   STATEMENT OF THE CASE**

Petitioner is a licensed attorney who practices criminal defense law. This case arises from a set of circumstances where Petitioner entered an appearance in a criminal case and then later moved to withdraw for a lack of payment by the criminal defendant. The state trial court judge denied the motion to withdraw and ordered the Petitioner to appear for trial. After Petitioner's refusal to proceed to trial, the state trial judge held him in contempt. Petitioner challenges that state court contempt judgment.

On December 21, 2016, Petitioner appeared at a change of plea hearing for a criminal defendant, Mr. Marcus Donell Ray ("Ray"), who was charged with a serious felony offense and set to enter a guilty plea. (*See* ECF 1-1, at 10.) Petitioner informed the state court judge that Ray's mother was gathering funds to hire Petitioner to represent Ray in the criminal case scheduled for trial in January of 2017, and Ray proceeded to withdraw his plea paperwork and requested to proceed with

trial. (*See id.*). Petitioner informed the state court judge that he expected to be hired to represent Ray within a week to ten days. (*Id.*). Petitioner acknowledged at the December hearing that he did not yet represent Ray, and the state court judge stated that Ray's current appointed counsel would represent Ray at the January 2017 trial if Petitioner did not file to substitute counsel. (*See id.*, at 11).

On January 2, 2017, Petitioner filed a motion to substitute counsel and a motion for continuance of the January 3, 2017 trial setting. (*See id.*, at 26). The state court trial judge granted both motions, and Petitioner was entered as counsel of record for Ray. (*Id.*, at 26-27). On January 29, 2017, the Petitioner filed a Motion to Withdraw as Counsel with the state trial court, citing Ray's failure to pay the agreed upon representation fee. (*Id.*, at 15-16). The state trial judge denied the motion on February 21, 2017. (*Id.*, at 14, 18).

On March 3, 2017, the state trial judge sent Petitioner a letter warning counsel that his motion to withdraw had been denied and informing Petitioner that the trial court would not tolerate behavior from the Petitioner similar to that of Petitioner's associate firm member, who had previously been denied the right to withdraw before trial in another district court and had then refused to participate in the criminal trial in any way. (*See id.*, at 26). Petitioner was warned in this letter that a failure to appear for trial would result in the state court judge's filing of a grievance with the state bar. (*Id.*). On equal date therewith, the state trial judge entered an "order to appear" mandating Petitioner's presence at the special trial setting for Ray on May 1, 2017. (*See id.*, at 28). Importantly, the order to appear also required Petitioner to "conduct the defense of Marcus Donell Ray." (*Id.*). The order did not require any specific trial strategies to be employed by Petitioner. (*Id.*).

On March 8, 2017, Petitioner sent a response letter to the state trial judge, wherein he asserted that the state trial judge's letter constituted an "advisory opinion" about how the trial judge would rule on any future announcement by the Petitioner that he was "not ready" to proceed to trial. (*See id.*, at 46). Petitioner further asserted that the state trial judge's letter created a conflict-of-interest in

2

Petitioner representing Ray subsequent to the motion to withdraw, and further alleged the state trial judge was acting unethically and in violation of Petitioner's and Ray's constitutional rights. (*See id.*, at 46). Petitioner wrote "if I am ready, I will proceed [to trial] and if I am not ready, I will announce not ready." (*Id.*). Petitioner further alleged he would not try the case "against Mr. Ray's consent and will cause me [sic] severe and undo economic injury." (*Id.*, at 47). Petitioner went on to state that "[i]f you will pay my office $15,000.00, with $7,500 up front, I well [sic] set my staff working on this case." (*Id.*).

On March 14, 2017, Petitioner filed a second motion to withdraw as counsel for Ray, referencing the state trial judge's "threatening letter." (*See id.*, at 22-24). On March 31, 2017[1], the state trial judge held a hearing on Petitioner's second motion to withdraw. (*See id.*, at 30-39). Ray testified solely that his mother and sister had not paid Petitioner in accordance with the representation agreement and that he was aware and agreed to Petitioner's motion to withdraw as an attorney. (*See id.*, at 35-39). Notably, Ray was not asked if he objected to the continued representation of Petitioner after the state trial judge's denial of the motion to withdraw. (*See id.*).

The state trial judge denied the second motion to withdraw at the hearing in March, and set the case for a special trial setting on May 1, 2017. (*See id.*, at 39). On April 10, 2017, Petitioner's ex parte motions for experts (ECF 1-1, at 60-77, 92-94), were denied by the state trial judge. (*See id.*, at 54, 86-91). Petitioner requested several experts to assist with investigation, and he also listed himself and his son (another attorney) as experts requiring compensation previously requested by his letter to the state trial judge. (*See id.*, at 60-77, 92-94).

On May 1, 2017, Petitioner appeared at Ray's special trial setting and announced "not ready" for trial. (*See id.*, at 101). Petitioner stated "I filed pretrial motions and they were denied. I can't

---

[1] It appears from the record that the hearing was held on March 3, 2017, but the initial page of proceedings references March 31, 2017, which only makes sense with the other evidence. (*See* ECF 1-1, at 32, indicating on the "appearances" page for the hearing that the date was March 31, 2017, subsequent to the second motion).

3

proceed without those." (*Id*., at 102). Additionally, Petitioner argued, "I feel there's a conflict of interest in this case also. I talked with my client and he feels the same way." (*Id*.). The state trial judge warned Petitioner that he would be held in contempt if he refused to participate in the meaningful defense of Ray for the trial. (*Id*., at 103-105). The state trial judge then proceeded to give Petitioner time to consider his position. (*See id*., at 109). On April 30, 2017, after business hours, Petitioner filed a motion to disqualify the state trial judge; however, because the motion was not in compliance with the filing rules for the district, it was rejected for filing the morning of the trial setting. (*See id*., at 109-118). The state trial judge ruled that he would not consider the motion as it was untimely. (*Id*., at 119). Petitioner was given the opportunity to consult with his own attorney, Jeff Blackburn, and then proceeded to announce "not ready" for trial a second time. (*Id*., at 120-122).

The state trial judge held Petitioner in contempt of court and sentenced him to ten days in the Potter County Jail. (*Id*., at 123). The state trial judge allowed Petitioner release on his own recognizance pending a hearing before an independent judge to review the contempt finding. (*Id*.). A judgment of contempt was entered. (*Id*., at 128-129). On July 28, 2017, an independent state judge reviewed the contempt proceedings and held a hearing. (*Id*., at 136). Petitioner's contempt conviction was sustained, and he was sentenced to seven (7) days in the Potter County Jail. (*Id*.).

Petitioner filed applications for leave to file a mandamus and writ of habeas corpus to the Texas Court of Criminal Appeals (TCCA) to reverse his contempt conviction, which were denied. *See Ex Parte Ronald T. Spriggs*, WR-87,260-01 & WR-87,260-02 (June 27, 2018). On June 27, 2018, Petitioner filed the instant federal application for habeas corpus. (ECF 1). Petitioner's motion for release from custody and stay of sentence pending this Court's decision on the merits was denied. (ECF 9). Petitioner has now served his full seven (7) day sentence and discharged his punishment.

## II. PETITIONER'S ALLEGATIONS

Petitioner contends his July 28, 2017, conviction for contempt of court is in violation of the Constitution and laws of the United States (ECF 1 at 15); although Petitioner's arguments are not clearly delineated, the Court determines Petitioner loosely raises the following claims for relief:

(1) Petitioner argues that state trial judge Doug Woodburn ordered Petitioner to proceed to trial in violation of *his client's* Sixth Amendment right to effective assistance of counsel, thus rendering the Court's "order to proceed" an unlawful order. (*See id.*, at 19-33).

(2) Petitioner contends that insufficient evidence exists to support his conviction for "constructive" contempt. (*Id.*, at 24-27).

(3) Petitioner asserts that his Thirteenth and Fourteenth Amendment rights were violated by the contempt conviction because the order to proceed to trial for representing a criminal defendant without just compensation amounted to involuntary servitude and deprivation of property without due process of law. (*Id.*, at 36).

(4) Petitioner alleges that his Fifth Amendment rights under the Takings Clause were violated by state District Judge Doug Woodburn's order to proceed with representation of the criminal defendant without just compensation. (*Id.*, at 36).

(5) Petitioner claims his Sixth Amendment rights under the Confrontation Clause were violated when his objections to the admission of evidence during his July 28, 2017, contempt hearing were overruled. (*Id.*, at 37).

## III. STANDARD OF REVIEW

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 2254. Petitioner met the "in custody" requirement at the time he filed the petition. *See Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). The Antiterrorism and Effective Death Penalty Act's ("AEDPA's") deferential framework, as set out in § 2254(d) and (e), applies only when a state court has adjudicated a petitioner's writ of habeas corpus on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 954 (5th Cir. 2001). An adjudication on the merits does not occur when the state habeas court disposes of the state habeas petition on procedural rather than substantive grounds. *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). In this case, the state court denied Petitioner *leave* to file a writ of habeas corpus. (ECF 1-1, at 139, 143-

147). Accordingly, no state court adjudication occurred, and Petitioner is entitled to de novo review. *See Johnson v. Cain*, 215 F.3d 489, 493 (5th Cir. 2000).

A habeas corpus proceeding is a collateral attack on a contempt judgment. *See, e.g., Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). To be entitled to a writ of habeas corpus, a petitioner must prove that the underlying contempt judgment is void. *Id*. at 468. An underlying judgment is void if it was beyond the court's power to enter the judgment, or if the judgment deprived the petitioner of liberty without due process. *See Ex Parte Casillas*, 25 S.W.3d 296, 298 (Tex. App.–San Antonio, 2000) (citations omitted).

### IV.   ANALYSIS

This Court's review is limited to determining if the contempt order was beyond the state trial court's power to enter or if the judgment deprived the petitioner of liberty without due process. *See id*. The Court will review each of Petitioner's grounds for relief in light of this standard.

The United States Supreme Court spelled out the procedural due process protections required in contempt proceedings as follows:

> Except for a narrowly limited category of contempts, due process of law ... requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

*In Re Oliver*, 333 U.S. 257, 275 (1948), *following Cooke v. United States*, 267 U.S. 517, 537 (1925). Defendants charged with criminal contempt are entitled to full criminal process, including the right to adequate notice (*United States v. United Mine Workers*, 330 U.S. 258, 297-98, (1947)); the right to a public trial (*In Re Oliver*, 333 U.S. at 275); the right to counsel (*Ridgway v. Baker*, 720 F.2d 1409, 1415 (5th Cir. 1983)); the right to a jury trial in cases where punishment exceeds six months in jail or other "serious" criminal consequences (*United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826-27 (1994)); the privilege against self-incrimination (*Boyd v. United States*, 116 U.S. 616,

634 (1886)); the presumption of innocence (*Michaelson v. United States ex rel. Chicago, St. P., M. & O.R. Co.*, 266 U.S. 42, 66 (1924)); and proof of guilt beyond a reasonable doubt (*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911)).

Texas law also provides that proceedings in criminal contempt cases must conform as nearly as practicable to proceedings in criminal cases, *Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex. 1986, orig. proceeding), and that the full panoply of process is due persons accused of criminal contempt. *See Ex parte Green*, 603 S.W.2d 216, 218 n.3 (Tex. 1980) (fair notice of charges); *Ex parte Hiester*, 572 S.W.2d 300, 303 (Tex. 1978) (rights to counsel and to confront witnesses); *Ex parte Werblud*, 536 S.W.2d 542, 547 (Tex. 1976) (privilege against self-incrimination); *Cliett v. Hammonds*, 305 F.2d 565 (5th Cir. 1962) (guilt beyond a reasonable doubt); *Ex parte Elmore*, 161 Tex. 585, 342 S.W.2d 558, 561 (1961) (presumption of innocence); *Ex parte White*, 149 Tex. 155, 229 S.W.2d 1002, 1004 (1950) (notice and opportunity to be heard); and *Ex parte Scott*, 133 Tex. 1, 123 S.W.2d 306, 311 (1939) (requirement of information or complaint).

Here, Petitioner challenges the state trial court's power to enter the judgment by alleging the March 3, 2017 "order to appear" was unlawful by forcing Petitioner into a conflict-of-interest, forcing him to provide ineffective assistance of counsel, and depriving him of just compensation (13th Amendment, 5th Amendment claims). Petitioner also alleges that he was denied due process in violation of the 6th Amendment Confrontation Clause and that he was denied due process because there was insufficient evidence for his contempt conviction.

A. *Unlawful Order: Involuntary Servitude, Deprivation of Property, and Takings Clause*

Petitioner's arguments regarding "just compensation" claim that the state trial judge's March 3, 2017, order to proceed to trial after denying the Petitioner's motions to withdraw for lack of payment were unlawful, and thus the contempt judgment is void. Petitioner first cites to *Ex parte Bain*, 568 S.W.2d 356, 361 (Tex. Crim. App. 1978), and argues that a state trial court should not force

"designated" counsel on an indigency defendant. (ECF 3, at 19-20). However, the Court finds that that case specifically noted, "[t]hus, we are not confronted with a situation where retained counsel has already received what the court considers an adequate fee, although not agreed upon, and is refused permission to withdraw as counsel." *Bain*, 568 S.W.2d at 361. Further, the *Bain* case involved counsel who had never filed an appearance in the criminal case to represent the defendant. (*Id.*).

Petitioner also cites *Ex Parte Jacobs* in support of his argument that the state trial court judge violated his constitutional rights. 664 S.W.2d 360 (Tex. Crim. App. 1984). However, that court found "[w]hile conduct of the applicant as an attorney might not be altogether commendable, and while it might have been irritating to the trial judge, it did not hinder the forward progress of the trial or tend to obstruct the administration of justice. Applicant did not refuse to obey any order to proceed to trial." *Id.*, at 364. Here, Petitioner specifically did disobey an order to proceed to trial and knew *at the time he took the case* that the case was already "number one" on the trial docket in January of 2017. (ECF 1.1, at 11). Thus, Petitioner should not have accepted representation and filed to substitute counsel unless he had obtained the necessary funds to proceed *first*, given the urgent nature of the court's trial docket.

The question of whether the contempt judgment was void because the state trial judge's decision to deny the motion to withdraw and order Petitioner to represent Ray without "just compensation" was "beyond the Court's power" has been decided. A state trial court has the authority to enter a contempt judgment where the attorney's behavior "threatened the orderly administration of judicial proceedings." *Farmer v. Strickland*, 652 F.2d 427, 437 (5th Cir. 1981). Here, Petitioner voluntarily filed a motion to substitute counsel within *days* of a trial setting knowing he had not received adequate funds. (*See* ECF 1-1, at 11, 26). Further, his reasons for announcing "not ready" and violating the state trial court's order to proceed to trial were because of the state trial judge's decision to deny experts; however, the attorney had listed himself as an "expert" needed for trial and

8

sought compensation. (*See id.*, at 60-77, 92-94, 102). Petitioner's behavior was precisely that which "threatened the orderly administration of judicial proceedings." *Farmer*, 652 F.2d at 437.

Petitioner has cited no authority in support of his claim that the state trial judge's order violated his 5th Amendment rights under the Takings Clause. The government did not seize any property from Petitioner, nor appoint Petitioner to represent Ray in this case.

B.  *Due Process: Confrontation Clause and Insufficient Evidence*

Petitioner argues that his contempt conviction is one of "constructive," rather than direct contempt, because the offense did not occur in front of the convicting judge. The Court disagrees. This case involves direct contempt. First, the March 3, 2017 order shows that the state trial judge issued it, and because the court can take judicial notice of its own files, the essential facts were within the state trial judge's own knowledge, particularly in light of his signature on the document. Second, the violation of the March 3, 2017 order's requirement for Petitioner to "conduct the defense of Marcus Donell Ray," (ECF 1-1, at 28) occurred in the state trial judge's *presence* at the May 1, 2017 special trial setting for Ray. (ECF 1-1, at 101). The state court trial judge entered the original contempt order. (*See id.*, at 123, 128-129). Therefore, all the essential facts were within the state trial court judge's own knowledge. No evidence was necessary; no hearing was required. *See Mayberry v. Pennsylvania*, 400 U.S. 455 (1971). Petitioner's criminal contempt conviction is considered "petty" under Supreme Court and Fifth Circuit precedent. *See Fahle v. Cornyn*, 231 F.3d 193, 196-97 (5th Cir. 2000). "[A] petty criminal contempt penalty does not exceed imprisonment for six months or a fine of $5,000." *Id.* at 196 (citing *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 838 n.5 (1994)). As such, a petty criminal contempt judgment still requires due process, but not a live evidentiary hearing. *Id.*

Petitioner specifically argues that he was denied the right to confront his witness: the state trial judge at his July 28, 2017, hearing on the contempt judgment. (ECF 3, at 37). However, in cases

of direct contempt, where the contempt judgment is later reviewed by an independent state judge and a new judgment is issued, the Petitioner does not have such a right. *See Mayberry*, 400 U.S. at 465. Where the criminal contempt is committed totally in the presence of the judge, the several standards of proof have no practical relevance. *Farmer v. Strickland*, 652 F.2d 427, 434 (5th Cir. 1981). For example, there is "not necessity for the production of evidence." *Id*.

Where a controversy between the judge and the contemnor is integrated with the alleged contumacious conduct and embroils the judge to the degree that the judge's objectivity reasonably can be questioned, the issue of whether contempt has been committed, as well as imposition of sanctions, should be referred to another judge. *See id*. The state trial court judge referred the case pursuant to the provisions of Texas Government Code Section 21.002. When such a case is referred, the judge before whom the contempt was committed should specify the acts of contempt in writing and direct that a record of the proceedings surrounding the acts be prepared. Both the transferring judge's charge of contempt and the transcript are forwarded to the judge to whom the case has been assigned. The judge hearing the matter shall base his findings and adjudication of the contempt charge solely on the transferred written charge and record. *See id*., at 465*; see also Taylor*, 418 U.S. at 488.

Because the Petitioner's contempt was direct, the review by the independent state trial judge was to remove any hint of bias from the contempt judgment already entered. Petitioner was provided counsel, an opportunity to be heard, notice of the proceedings, and the property evidentiary standards were applied. Petitioner's objections to the transcript and record from the original contempt proceeding based on hearsay and Confrontation Clause violations were properly overruled. Thus, his proceeding comported with due process.

Petitioner also claims that there was insufficient evidence to support his contempt judgment. (ECF 3, at 24-27). Specifically, Petitioner agains asserts this is a case of constructive contempt. (*See id*.). Petitioner argues that the March 3, 2017, order could be interpreted differently by reasonable

persons. (*Id.*). The Court again disagrees. The March 3, 2017 letter and order, only specifically directed Petitioner's appearance at the *special trial setting* of Ray and that Petitioner "conduct the defense," (e.g. proceed to trial). (ECF 1-1, at 28). Petitioner's own March 8, 2017, response letter to the state court trial judge indicates he fully understood that "conduct the defense" involved proceeding to trial. (*See id.*, at 46-47). As such, the Court finds that the order violated by Petitioner was not ambiguous. Although Petitioner may argue that his "defense" of Ray involved announcing "not ready," he fully understood this was in violation of the state trial judge's order; further, the state trial judge also clearly explained his meaning in another March 3, 2017, letter issued contemporaneously with the order in question. (*See id.*, at 26-28, 46-47). Thus, Petitioner's argument concerning insufficiency of the evidence to convict (in reality an attack on the validity of the state trial judge's order) is invalid, and his due process challenge thus fails.

## V. RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by Petitioner Ronald T. Spriggs be DENIED.

## VI. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 22, 2021.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).